UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDIA ALBARRAN PEDRAZA, as Next Friend of C.M.J.A., a Minor, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-2249-B |
| CEDAR HILL INDEPENDENT SCHOOL DISTRICT, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cedar Hill Independent School District ("CHISD")'s second Motion to Dismiss (Doc. 9). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** CHISD's Motion.

## I.

## BACKGROUND

This case follows from a tragic accident in which C.M.J.A., a four-year-old girl with Down Syndrome, choked on her lunch and died at a CHISD elementary school. Doc. 8, Am. Compl. ¶¶ 4.1-4.9.

Pedraza alleges the following, which the Court assumes to be true at this stage. C.M.J.A. was the only student with special needs at her school. *Id.* ¶ 4.3. Despite her condition, CHISD did not provide C.M.J.A. with an Individualized Education Plan ("IEP"). *Id.* ¶ 4.2. For example, CHISD did not have an appropriate bathroom procedure for C.M.J.A. *Id.* ¶ 4.3. Instead, C.M.J.A. regularly soiled herself at school and had to wait for family to come to the school to clean her. *Id.*

CHISD also failed to provide C.M.J.A. with tailored educational resources or dietary restrictions. *Id.* ¶¶ 4.10, 5.6. Superintendent Dr. Gerald Hudson and CHISD staff knew of C.M.J.A.'s disability and the risks associated with it, but they disregarded those risks. *Id.* ¶¶ 3.2, 4.12-13. The knowledge of the disability and its risks came from communications with C.M.J.A.'s family and the enrollment records. *Id.* ¶ 4.12. For instance, CHISD staff did not offer "modified-texture" foods, cut food into smaller pieces, assign trained staff to supervise C.M.J.A.'s eating, or prohibit certain "high risk foods." *Id.* ¶ 4.13. CHISD also isolated C.M.J.A. from her classmates and denied her social interaction. *Id.* ¶¶ 4.10, 5.8.

In contrast, non-disabled students at the elementary school were provided safe meals, integration with peers, prompt assistance with the bathroom, and adequate supervision. *Id.* ¶ 4.22.

On January 20, 2023, C.M.J.A. died when she choked on a piece of sausage in a meal she received from the school. *Id.* ¶¶ 4.4-4.9. A school employee present at the scene attempted to help C.M.J.A. and alerted the school nurse. *Id.* ¶ 4.6-4.7. Emergency medical services were called and, upon arrival, took over care of C.M.J.A. from the school nurse. *Id.* ¶¶ 4.7-4.8. They were unable to save C.M.J.A. *Id.* ¶¶ 4.6-4.8.

On September 3, 2024, Plaintiff Claudia Albarran Pedraza, as C.M.J.A.'s mother and next friend, brought her original complaint against CHISD asserting claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment Due Process and Equal Protection Clauses and under Title II of the Americans with Disabilities Act ("ADA"). *See generally* Doc. 1, Compl. CHISD moved to dismiss the original complaint shortly thereafter. *See generally* Doc. 4, Mot. Dismiss. On August 14, 2025, the Court issued its Memorandum Opinion and Order dismissing the § 1983 claims

without prejudice. Doc. 7, Mem. Op. & Order, 14. The Court denied CHISD's first Motion to Dismiss the ADA claim. *Id.*[1]

On September 4, 2025, Pedraza filed an Amended Complaint, again bringing claims under Title II of the ADA and § 1983. *See* Doc. 8, Am. Compl. ¶¶ 5.1-5.21. In response, CHISD filed a second Motion to Dismiss (Doc. 9), seeking to dismiss each of Pedraza's claims under Federal Rule of Civil Procedure 12(b)(6). The Court considers the Motion below.

## II.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a defendant to move for dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads

---

[1] Pedraza also initially brought a claim under the Individuals with Disabilities Education Act, which the Court dismissed and Pedraza did not reassert.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (citation modified).

### III.

### ANALYSIS

*A.    The Court Denies CHISD's Motion to Dismiss Pedraza's ADA Claim.*

In its first Memorandum Opinion granting in part and denying in part CHISD's first Motion to Dismiss, the Court noted that CHISD did not discuss Pedraza's ADA claim. *See* Doc. 7, Mem. Op. & Order, 13. Instead, the first Motion to Dismiss argued "Pedraza fail[ed] to allege facts sufficient to support causation for any claim." Doc. 4, Mot., 11. Regardless, because Pedraza had sufficiently alleged an ADA claim, the Court denied CHISD's first Motion to Dismiss as to that claim.

Now, in its second Motion to Dismiss, CHISD again requests that the Court dismiss Pedraza's ADA claim. Doc. 9, Mot., 3-8. CHISD argues Pedraza has not plausibly alleged the third element of her ADA claim or intentional discrimination, as required to obtain the requested compensatory damages. *Id.*

The Court already held that Pedraza sufficiently alleged the third element of her ADA claim by advancing a failure-to-accommodate theory. *See* Doc. 7, Mem. Op. & Order, 11-14. As Pedraza's ADA claim in her Amended Complaint is not substantively different from the ADA claim in the

Original Complaint, the Court again finds that Pedraza has sufficiently stated facts that support each element of her ADA claim. *See id.*

Turning to damages, CHISD is correct that a plaintiff must show intentional discrimination in order to obtain damages for an ADA claim. *See J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023). For a failure-to-accommodate theory, "intentional discrimination requires at least actual knowledge that an accommodation is necessary." *Id.* at 450 (quoting *Smith v. Harris Cnty.*, 956 F.3d 311, 319 (5th Cir. 2020)). The necessary notice results from facts showing the "the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (internal quotation marks and citations omitted).

Upon review of the facts alleged in the Amended Complaint, the Court draws the reasonable inference that C.M.J.A.'s Down Syndrome, her bathroom limitations, and need for increased supervision regarding bathroom breaks were sufficiently open, obvious, and apparent. Pedraza alleges CHISD was aware of C.M.J.A.'s disability because of conversations with the family and her enrollment records. The Court can reasonably infer from the facts that CHISD was aware of C.M.J.A.'s bathroom limitations as C.M.J.A. regularly soiled herself at school. Lastly, the need for an accommodation of increased supervision was apparent from the result of not supervising: C.M.J.A. was left in her soiled clothes until a family member came to the school and cleaned her.

Accordingly, the Court **DENIES** CHISD's second Motion to Dismiss Pedraza's ADA claim.

B.    *The Court Dismisses Pedraza's § 1983 Claim Because Pedraza Fails to Plead Sufficient Facts to Plausibly Allege* Monell *Liability.*

Section 1983 suits against municipalities are referred to as *Monell* claims. *See Macias v. Bexar Cnty.*, No. 24-50603, 2025 WL 1604513, at *3 n.1 (5th Cir. June 6, 2025) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 660 (1978)). An injured plaintiff can only successfully sue a municipal

organization, like a school district, for a constitutional violation if she can allege facts that plausibly support all three elements of municipal liability: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted).

CHISD asserts Pedraza's § 1983 claim against it should be dismissed because she has not plausibly alleged the existence of an official policy or custom that was promulgated by the CHISD Board of Trustees, the relevant policymaker. Doc. 9, Mot., 12-14.

In response, Pedraza argues the Amended Complaint plausibly alleges § 1983 municipal liability by alleging "widespread customs (failing accommodations for disabled students) by final policymakers (Superintendent Hudson and administration)." Doc. 11, Pl.'s Resp., 5.

Pedraza appears to assert three *Monell* claims against CHISD. First, she alleges CHISD has a policy or custom of failing to accommodate C.M.J.A.'s disability in violation of the Fourteenth Amendment Due Process Clause. *See* Doc. 8, Am. Compl. ¶ 5.3. Second, she alleges CHISD intentionally discriminated against C.M.J.A. by treated non-disabled students better than C.M.J.A., in violation of the Equal Protection Clause. *See id.* ¶ 5.8. Third, she alleges CHISD failed to provide training tailored to C.M.J.A.'s swallowing impairment, purportedly another violation of the Due Process Clause. *Id.* ¶ 4.19. The first two *Monell* claims are policy-based and can be analyzed together, while the third *Monell* claim will be analyzed separately as a failure-to-train claim. Upon review, the Court finds that Pedraza has not alleged facts that plausibly support any of those claims.

1. <u>Pedraza Does Not Sufficiently Allege That A Policymaker Knew Or Should Have Known Of The Alleged Customs.</u>

For Pedraza's two policy-based *Monell* claims, application of the supposed policies or customs led to (1) failing to accommodate C.M.J.A.'s disabilities and (2) treating non-disabled students better than C.M.J.A.

Pedraza does not describe or identify any official policy in her Amended Complaint. Therefore, she must instead allege facts showing CHISD had a custom of failing to accommodate disabilities or intentionally discriminating against disabled students. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (noting that a policy "usually exists in the form of written policy statements, ordinances, or regulations," but can "also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001))).

But even if Pedraza sufficiently alleged facts showing that such unwritten customs existed, her claim still fails "unless actual or constructive knowledge of such custom is attributable to" the relevant policymaker. *See Peña*, 879 F.3d at 623 (internal quotation marks and citation omitted). Under Texas law, "the final policymaker for a school district is the Board of Trustees." *Sims v. Dall. Indep. Sch. Dist.*, No. 3:23-CV-10-N, 2024 WL 495259, at *2 (N.D. Tex. Feb. 7, 2024) (Godbey, C.J.) (other citation omitted) (citing Tex. Educ. Code § 11.051). Although Pedraza does not need to identify the Board of Trustees by name as the policymaker in her Amended Complaint, she does need to allege facts making it plausible that the Board of Trustees knew or should have known of the customs at issue. *See Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). That is because a municipality can only be liable for a custom that "results from the decision or acquiescence of the

municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Pedraza does not allege facts to suggest that the Board of Trustees knew or should have known of any supposed customs behind how C.M.J.A. was treated. Nothing in the Amended Complaint suggests that the Board of Trustees had actual knowledge of such alleged customs. Therefore, Pedraza must allege facts permitting an inference that the Board of Trustees had constructive knowledge:

> Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808-09 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)).

Pedraza does not allege facts that permit an inference that the Board of Trustees had constructive knowledge of the alleged customs. Pedraza alleges that CHISD staff, including the superintendent, Dr. Hudson, knew about C.M.J.A.'s disabilities and the associated risks. Doc. 8, Am. Compl. ¶¶ 4.11-4.12. But Dr. Hudson and CHISD staff are not the relevant policymaker. Pedraza alleges C.M.J.A. was the only disabled student at the school. The Amended Complaint does not allege instances of CHISD's nonfeasance in treating disabled students not connected to C.M.J.A. Pedraza's Amended Complaint does not contain any facts that indicate the Board of Trustees could have known, by properly exercising their responsibility, about a widespread custom of discrimination based only upon the alleged mistreatment of one student. For instance, although *employees* at CHISD may or should have known that C.M.J.A. was regularly soiling herself, there are no allegations in the Amended Complaint permitting the Court to infer the issue created a "high level of publicity" or

public discussions that would have alerted the Board of Trustees to investigate the treatment of disabled students at the school. *See Hicks-Fields*, 860 F.3d at 809 (citation omitted). Lastly, Pedraza's allegations that the family requested dietary accommodations for C.M.J.A. and that the requests were ignored are too vague. *See id.* ¶ 5.5. When did the family request the accommodation? To whom was the request made? Without more facts, Pedraza does not allege enough to suggest that the Board of Trustees should have known of a custom of CHISD's treating disabled students poorly. As the policymaker prong is essential to her policy-based *Monell* claims, the failure to allege any sufficient facts supporting that prong is fatal. Dismissal is therefore appropriate on the policy-based *Monell* claims.

2. Pedraza Does Not Allege Sufficient Facts To Show Deliberate Indifference As Required To Plead A *Monell* Failure-To-Train Claim.

For Pedraza's failure-to-train *Monell* claim, the following rubric applies:

To establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: "(1) the [municipality] failed to train or supervise the [employees] involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."

*Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022) (quoting *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021)). The Supreme Court has noted that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

Pedraza's failure-to-train claim turns on the third element, deliberate indifference. Typically, the deliberate indifference prong requires the plaintiff to show a "pattern of similar constitutional violations by untrained employees" so that a policymaker has notice of the deficient training. *Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023) (quoting *Connick*, 563 U.S. at 62). But in rare

-9-

circumstances, the Fifth Circuit has permitted plaintiffs to rely upon a "narrow" single-incident exception to show deliberate indifference. *See Peña*, 879 F.3d at 624. The Fifth Circuit has found the single-incident exception is limited to instances when an employee or officer receives "no training whatsoever," rather than a failure to train in one limited area. *Id.*

Pedraza's Amended Complaint does not allege a pattern of similar constitutional violations. The failure-to-train claim rests on Pedraza's allegation that CHISD failed to implement training on C.M.J.A.'s dietary needs, which resulted in the fatal choking incident. Doc. 8, Am. Compl. ¶ 4.19. The Amended Complaint contains no facts about other choking incidents. As far as the Amended Complaint alleges, C.M.J.A.'s death was the only choking occurrence at CHISD. *See Peña*, 879 F.3d at 624.

With only one occurrence, Pedraza would need to allege that the employees at CHISD received "no training whatsoever." *See id.* Instead, she claims CHISD failed to implement training tailored to C.M.J.A.'s swallowing impairment. Doc. 8, Am. Compl. ¶¶ 4.19, 5.5. Pedraza's facts suggest the CHISD staff that aided C.M.J.A. and called EMS likely had some emergency training. Because her claim relies upon CHISD failing to train their employees on a very particularized topic, the rare single-incident exception does not apply to Pedraza's claim. Without more, Pedraza has not pleaded sufficient facts permitting an inference that CHISD failed to adequately train its employees.

As Pedraza's Amended Complaint fails to plausibly allege § 1983 municipal liability, the Court grants CHISD's Motion to Dismiss as to the § 1983 claims.

C.    *Dismissal With Prejudice is Appropriate for the § 1983 Claim.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the

court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

The Court dismisses with prejudice Pedraza's § 1983 claim. Pedraza has already been given two opportunities to adequately plead the claim. Thus, it seems Pedraza has pleaded her best case.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Pedraza's Second Motion to Dismiss (Doc. 9). The Court **DISMISSES** Pedraza's § 1983 claims **WITH PREJUDICE**. Pedraza's ADA claim will proceed.

**SO ORDERED.**

**SIGNED: May 4, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE